IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **ROBERT L. WEST**, <br><br> Defendant. | Case No. 3:25-cr-00118-IM-1 <br><br> **OPINION** |

Nicholas D. Meyers and M. Alex DeLorenzo, Assistant United States Attorneys, and Michael Middleton, Certified Law Clerk, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Plaintiff-Appellee.

Elizabeth G. Daily, Assistant Federal Public Defender, 101 SW Main Street, Suite 1700, Portland, OR 97204. Attorney for Defendant-Appellant.

**IMMERGUT, District Judge.**

Appellant Robert L. West was convicted after a bench trial of three violations of three federal regulations: failure to comply with official signage in violation of 41 C.F.R. § 102-74.385, failure to comply with a lawful directive of a federal officer in violation of 41 C.F.R. § 102-74.385, and unauthorized video recording on federal property in violation of 41 C.F.R. § 102-74.420. He timely appealed, asserting: (1) the magistrate judge erred in admitting a prior

PAGE 1 – OPINION

criminal conviction; (2) the evidence was insufficient to support any of his convictions, and (3) Congress violated the Constitution by delegating to the General Services Administration the power to promulgate the regulations at issue.

This Court heard argument on Defendant's appeal on August 19, 2025. After considering the briefing, argument, and record of this case, this Court finds that the admission of the prior conviction was harmless error, that the evidence was sufficient to support each of Defendant's convictions, and that the regulations at issue were not promulgated pursuant to an unlawful delegation of legislative power. Defendant's convictions are AFFIRMED.

## BACKGROUND

On January 26, 2024, Defendant Robert West entered the Social Security Administration ("SSA") Portland Hearing Office in the Lloyd Center Tower in Portland, Oregon. Excerpts of Record ("E.R."), ECF 55-1 at 152. After entering the office, Defendant took out his cell phone and began recording a video of the interior of the Hearing Office. *Id.* at 37. The video of this encounter was ultimately published to Defendant's public YouTube account and admitted at trial as Exhibit 5. Trial Stipulations, ECF 38 at 2; Government's Exhibit List, ECF 35 at 2.

Within the first minute of the video, Federal Protective Service Officer Patrick Carpenter approached Defendant and told him that "we don't allow recording" in the Hearing Office, pointing out that there was a sign posted to that effect. Ex. 5 at 00:40. Within seconds, another Social Security employee, Adonis Pendleton, also informed Defendant that "there's no recording in here." *Id.* at 00:50. Carpenter and Defendant then together reviewed the posted sign, which states "photography and videography prohibited." *Id.* at 01:10; E.R. (Ex. 3), ECF 55-1 at 85. Defendant acknowledged the sign, but asked Officer Carpenter to "show [him] the law." Ex. 5 at 01:15. Defendant explained he had seen a sign in the hallway outside the Hearing Office that permitted him to record. *Id.* at 01:25.

PAGE 2 – OPINION

Officer Carpenter and Defendant then left the Hearing Office to review the signs posted in the hallway. *Id.* at 01:45. One sign contained the entire text of Subpart C of 41 C.F.R. part 102-74, including the section providing that, "[e]xcept where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of . . . [b]uilding entrances, lobbies, foyers, corridors, or auditoriums." E.R. (Ex. 4), ECF 55-1 at 86 (quoting 41 C.F.R. § 102.74.420). Another, larger sign next to it stated that, in accordance with 41 C.F.R. § 102-74.420, SSA "prohibits all photography, video recording, and audio recording in agency-occupied facilities (including entrances, lobbies, foyers, corridors, and auditoriums) unless approved in advance and in writing by an authorized official of the agency." *Id.*

While continuing to film, Defendant explained to Officer Carpenter that he believed he could film in the Hearing Office "unless there is a court order or a law that says you can't do it." Ex. 5 at 01:43. After reading 41 C.F.R. §102-74.420 together, Officer Carpenter stated that a supervisor would be summoned. *Id.* at 02:10. Defendant expressed his view that, "according to that, I can film in there." *Id.* at 02:13. Defendant then re-entered the Hearing Office and filmed Mr. Pendleton, various features of the Hearing Office, and the interior of multiple hearing rooms, including one active SSA hearing. *Id.* at 02:25–03:50.

SSA Supervisor Jessica Witt then approached Defendant, identified herself as the manager, and asked him to "please stop recording." *Id.* at 03:50. Defendant asked whether there was a federal law that prohibited recording or just a federal rule. *Id.* at 03:56. As during his encounter with Officer Carpenter, Witt pointed to the "photography and videography prohibited" sign, Plaintiff referred to the sign that reproduced 41 C.F.R. § 102-77.420, and Witt and Defendant proceeded to the hallway to review that sign. *Id.* at 04:03–04:18.

PAGE 3 – OPINION

After reviewing the sign in the hallway, Ms. Witt told Defendant that he was allowed to record in the hallway, but not in the reception area. *Id.* at 04:47. Defendant stated that he believed the reception area was a "lobby area" within the meaning of § 102-77.420. *Id.* at 04:56. Ms. Witt stated it is a "reception area." *Id.* at 04:59. Defendant stated that it was also a lobby. *Id.* at 05:01. Ms. Witt ultimately informed Defendant that, if he did not stop recording, his hearing scheduled for that day would be postponed. *Id.* at 05:20. After additional discussion, Officer Carpenter pointed out the sign stating that SSA prohibits all video recording in agency-occupied facilities, including lobbies, unless approved in advance and in writing. *Id.* at 06:05; E.R., ECF 55-1 at 86. Defendant stated that this was "a government rule" and "not a federal law." Ex. 5 at 06:11. Ms. Witt explained that it was a federal law. *Id.* at 06:17. Defendant then requested permission to record, *id.* at 06:43, which was denied, *id.* at 06:46.

Defendant and Ms. Witt continued to discuss their differing interpretations of the word "lobby." *Id.* at 06:57–08:53. Ms. Witt eventually walked away. *Id.* at 08:53. Defendant then filmed the reception area of the Hearing Office while standing in the hallway for several minutes, *id.* at 08:58–12:18, before again reviewing the poster with § 102-77.420 and several additional signs in the hallway, *id.* at 12:40–18:52. Defendant then left the building. *Id.* at 19:51.

After leaving the building, Federal Protective Service Inspector Hunter Crofoot issued a citation to Defendant for failure to comply with official signage. E.R., ECF 55-1 at 151. After reviewing the video posted to Defendant's YouTube channel, Inspector Crofoot issued three additional citations for failure to comply with a lawful directive of a federal officer, *id.* at 150, 153–54, and a citation for unauthorized video recording on federal property, *id.* at 149.

The case proceeded to a bench trial before Magistrate Judge Russo. Before trial, Judge Russo granted Defendant's motion to dismiss two of the citations for failure to comply with

lawful directives. *Id.* at 21–22. The government elected to proceed on the citation for failure to comply with the lawful directives of Officer Carpenter. *Id.* at 22–24. Judge Russo found Defendant guilty on all counts. *Id.* at 76–77. Defendant was ordered to pay $250.00, as well as a $30.00 processing fee, on the citation for failure to obey a lawful order. *Id.* at 4. No fines were ordered on the other two convictions. *Id.* at 5.

## STANDARDS

This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3402. *See United States v. Soolook*, 987 F.2d 574, 575 (9th Cir. 1993). "The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

This Court reviews the magistrate judge's legal conclusions de novo and findings of fact for clear error. *United States v. Rodriguez*, 518 F.3d 1072, 1076 (9th Cir. 2008). Mixed questions of fact and law that implicate constitutional rights are reviewed de novo. *Berger v. City of Seattle*, 569 F.3d 1029, 1035 (9th Cir. 2009) (en banc).

## DISCUSSION

Defendant raises three challenges to his convictions. First, he argues that Judge Russo erred by admitting a 2022 conviction for failure to appear under Rule 404(b). This Court agrees that the prior conviction was of little, if any, probative value in this case, but finds any error was harmless. Next, Defendant argues that the evidence at trial was insufficient to establish his guilt beyond a reasonable doubt. This Court, viewing the evidence in the light most favorable to the prosecution, determines that a reasonable factfinder could have found each of the elements of each of the convictions. Finally, Defendant argues that 40 U.S.C. § 1315(c) reflects an unconstitutional delegation of legislative power to the executive. This Court concludes that the statute sufficiently articulates an intelligible principle to survive a nondelegation challenge.

A. **Admissibility of Defendant's Prior Conviction Under Rule 404(b)**

Defendant argues that the trial court erred in admitting a prior state court conviction. Defendant was convicted in October 2022 for failure to appear on a citation. E.R., ECF 55-1 at 89. The Government sought to introduce evidence of Defendant's probation conditions, which included a requirement that he not possess cameras or recording devices "at any police department or municipal city hall building." *Id.* at 92, 136. The trial court admitted the prior conviction after finding that it satisfied the four-part standard for admissibility in *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004), and that it was more probative than prejudicial. E.R., ECF 55-1 at 16.

Defendant challenges that ruling, arguing that his prior conviction was not relevant for any permissible purpose under Rule 404(b). This Court finds that his prior conviction was of little relevance but concludes that its admission was harmless.

Rule 404(b)(1) bars evidence of a person's prior crimes, wrongs, or acts for the purpose of proving that a person acted in accordance with his character. Rule 404(b)(2) allows, however, for the admission of such evidence for other purposes, including proving knowledge or absence of mistake. Evidence of other acts must (1) "tend to prove a material issue," (2) "not be too remote in time," (3) provide "sufficient evidence for a reasonable jury to conclude that the [party] committed the prior acts," and (4) "when used to show knowledge and intent, . . . be sufficiently similar to the charged offense." *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1264 (9th Cir. 2024).

"When the government's theory is one of knowledge . . . the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994). "This logical connection must be 'supported by some propensity-free chain of

PAGE 6 – OPINION

reasoning.'" *United States v. Rodriguez*, 880 F.3d 1151, 1168 (9th Cir. 2018) (quoting *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc)). This Court reviews *de novo* whether the evidence of other acts is relevant to the crime charged. *Id.* at 1167.

The government suggests that the probation condition is admissible to "demonstrate that Defendant was on notice that he understood that government authorities may and do impose such restrictions on government property." Government's Response Brief, ECF 57 at 10. But the concept that regulations governing recording on public property may sometimes exist does not provide a sufficient logical connection to render Defendant's prior condition of probation admissible. The probation condition meant that Defendant alone, as a consequence of his conviction, was not allowed to record in certain municipal buildings for one year. The charged conduct in this case took place after his probation had expired, in a different building, in a different city, owned by a different government. Moreover, the regulations Defendant was charged with violating in this case apply to any person visiting the Social Security office, rather than being imposed on an individual as a condition of probation. There is no persuasive connection between the expired probation condition and Defendant's knowledge of any regulations that apply in the Social Security office.

This Court finds, however, that the introduction of the prior conviction was harmless error. "Where a district court errs in admitting other act[s] evidence, we review for harmless error." *United States v. Charley*, 1 F.4th 637, 651 (9th Cir. 2021). This Court must "start with a presumption of prejudice" as to the evidence's effect and reverse unless "it is more probable than not that the erroneous admission of the evidence" did not materially affect the verdict. *Id.*

The conviction was not received in evidence until after closing argument, E.R., ECF 55-1 at 75–76, and the only reference to it in the trial transcript occurred in the closing argument,

PAGE 7 – OPINION

when the government cited it as showing Defendant knew there may be rules about recording at the Social Security office, *id.* at 69. As Defendant points out, "there was no question in this case that Mr. West was aware that rules about recording existed at the Social Security Hearings Office." Defendant-Appellant's Opening Brief ("App. Br."), ECF 55 at 24. The conviction, even if improperly admitted, appears to only have been used to prove a fact that Defendant acknowledges he did not dispute. In light of the strong evidence of Defendant's knowledge and intent, as shown on the video, this Court finds that it is more likely than not that the admission of the prior conviction did not materially affect the verdict.

## B. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence supporting each of the three convictions. This Court reviews the sufficiency of the evidence to support a conviction de novo. *United States v. Ruiz*, 462 F.3d 1082, 1087–88 (9th Cir. 2006). This Court must review the evidence in the light most favorable to the prosecution and decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). As explained below, the evidence was sufficient to support each of Defendant's convictions.

### 1. Failure to follow a lawful directive

Defendant was convicted on one count of failure to follow the lawful directives of Officer Carpenter in violation of 41 C.F.R. § 102-74.385. He argues that the evidence at trial was insufficient to support that conviction because Officer Carpenter never issued a lawful order. App. Br., ECF 55 at 30–32. He also argues that he did not knowingly and willfully disobey any such order. *Id.* at 32. This Court concludes that sufficient evidence supported this conviction.

41 C.F.R. § 102-74.385 requires persons on federal property to obey the "lawful direction of federal police officers and other authorized individuals." The Ninth Circuit has explained that a "lawful direction" typically has several characteristics: (1) "officers gave defendants an unambiguous command (often multiple times)"; (2) "officers ensured that the command was understood"; (3) "officers communicated that defendants would be arrested for failing to comply with the order"; and (4) "defendants were given a reasonable opportunity to comply." *United States v. Huizar*, 762 F. App'x 391, 392 (9th Cir. 2019) (mem.). The Ninth Circuit has explained that "basic principles of due process" require "all, or many, of these qualities." *Id.*

Viewing the evidence in the light most favorable to the prosecution, this Court finds that a reasonable factfinder could conclude from the evidence that Officer Carpenter clearly directed Defendant to stop filming or face arrest, and that Plaintiff intentionally defied that order by remaining on the property and continuing to film. Officer Carpenter told Defendant that "we don't allow recording" in the SSA Hearing Office, then walked over to and pointed at a sign that stated "photography and videography prohibited." Ex. 5 at 00:40–01:15. This was a clear directive to stop recording, and Defendant was given repeated opportunities to comply. Defendant nonetheless reentered the Hearing Office and continued recording. *Id.* at 02:25.

Defendant first argues that he was not given an unambiguous command. Defendant characterizes Officer Carpenter as only "advis[ing]" Defendant "as to his understanding" of facility rules, and argues that any commands were ambiguous. App. Br., ECF 55 at 30–31. This Court disagrees with that view of the evidence. Defendant was unambiguously and repeatedly informed that recording was prohibited in the Hearing Office and directed to regulations supporting that rule. In the context provided by the video evidence, it is clear that these statements amounted to a command to stop recording.

PAGE 9 – OPINION

Defendant also points out that he was never informed that he could be arrested if he did not stop recording. App. Br., ECF 55 at 31. Although Officer Carpenter did not himself threaten to arrest Defendant, the posted regulations that they reviewed together did refer to potential criminal penalties, *see* E.R. 86, ECF 55-1 (quoting 41 C.F.R. § 102-74.450), and the evidence makes clear that Defendant was fully aware that recording was prohibited. The posted regulations afforded Defendant fair notice that he could be arrested for violating the prohibition on recording in the Hearing Office.

Defendant argues that he was not given a reasonable opportunity to understand and comply with the directives. App. Br., ECF 55 at 31. This Court again disagrees. Once Officer Carpenter informed Defendant that he would find a supervisor, Defendant had a reasonable opportunity to comply. He could have stopped recording before re-entering the Hearing Office to speak with the supervisor. He also could have waited in the hallway for the supervisor to arrive. Instead, he chose to re-enter the Hearing Office while continuing to record. While Defendant minimizes this conduct as returning to the reception area "briefly," *id.*, this is the portion of Defendant's video that in which he recorded an active SSA hearing. Ex. 5 at 02:25–03:50.

Finally, Defendant contends he did not knowingly and willfully violate the regulations because he did not receive adequate notice of the rule. App. Br., ECF 55 at 32. But he was repeatedly told to stop recording, including an explanation of the law that allowed Officer Carpenter to issue that command. "[F]air notice and common sense" compel a conclusion that a reasonable fact-finder could find Defendant knowingly and willfully chose to violate the regulation. *United States v. Bichsel*, 395 F.3d 1053, 1057 (9th Cir. 2005).

### 2. Failure to comply with a posted sign

Defendant was convicted on one count of failure to comply with a posted sign prohibiting "taking picture or video inside SSA offices" in violation of 41 C.F.R. § 102-74.385. He argues

PAGE 10 – OPINION

that the evidence at trial was insufficient to support a finding that he knowingly and willfully violated the regulation because he believed § 102-74.420(c) allowed him to film. App. Br., ECF 55 at 34–35. He explains that he "only recorded in areas that he believed were lobbies or corridors," as defined by § 102-74.420(c), and stopped recording in the reception area once informed it was not a lobby or corridor. *Id.* at 35.

This Court finds that the evidence was sufficient to support a finding that Defendant recorded in violation of the posted sign. The posted sign clearly prohibited recording in the SSA Hearing Office "without the expressed written consent of an authorized official of the agency." E.R. 85, ECF 55-1. If there was any ambiguity in this sign, it was clarified by the sign in the hallway stating that the SSA prohibits all video recording in SSA facilities, "including . . . lobbies [and] corridors." E.R. 86. These signs were together sufficient to provide notice that Defendant's conduct was unlawful. *See Bichsel*, 395 F.3d at 1057. The evidence suggests that Defendant understood that an SSA rule prohibited recording, but that he believed this rule did not have the force of federal law. *See* Ex. 5 at 03:56. A reasonable factfinder could find that Defendant, by recording in the SSA Hearing Office after reading the signs, willfully disobeyed the sign prohibiting recording in the SSA Hearing Office.

### 3. Unlawful recording

Finally, Defendant challenges the sufficiency of the evidence supporting his conviction for unlawful recording under 41 C.F.R. § 102-74.420. That rule prohibits photographing "[s]pace occupied by a tenant agency" without the permission of that agency, but permits photographing "[b]uilding entrances, lobbies, foyers, corridors, or auditoriums." § 102-77.420(a), (c). This regulation provides a default rule and permits photography "[e]xcept where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it." § 102-77.420.

Defendant argues first that there was no "officially promulgated rule or regulation" prohibiting recording apart from § 102-77.420. App. Br., ECF 55 at 35–36. But § 102-77.420 does not limit its scope to officially promulgated rules or regulations; it also encompasses "orders" and "directives." And SSA issued an order or directive, posted in the hallway, prohibiting "all photography, video recording, and audio recording in agency-occupied facilities (including entrances, lobbies, foyers, corridors, and auditoriums.") E.R. 86, ECF 55-1. Defendant's recording violated this rule.[1]

Defendant also contends that he did not know the reception area was not a lobby until he was informed by Ms. Witt. App. Br., ECF 55 at 36–37. This Court does not find it necessary to determine the distinction between a "lobby" and a "reception area" to affirm Defendant's conviction on this count. *But see United States v. Cordova*, No. 23-cr-453, 2024 WL 4494300, at *5 (D. Colo. Oct. 15, 2024) (finding a similar room was an "office space, not a 'lobby'"). After Defendant entered the Hearing Office for the second time, he recorded not only the interior of the lobby/reception area, but also the interior of multiple hearing rooms, including one active SSA disability hearing. Ex. 5 at 02:25–03:50. By any definition, a hearing room is not a lobby. This Court therefore concludes that there was sufficient evidence to support each of the three convictions.

## C. Nondelegation Doctrine

Finally, Defendant argues that 40 U.S.C. § 1315(c), the statute delegating to the Department of Homeland Security the authority to promulgate the regulations under which he

---

[1] Defendant briefly contends that, if the posted sign itself is the official rule, the unlawful recording charge would be unconstitutionally duplicative of the charge for failure to obey posted signs. App. Br., ECF 55 at 36 n.4 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). This Court does not find that this concern is applicable here because a single penalty was imposed at the end of a single prosecution. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

was charged, is an unconstitutional delegation of legislative power to the executive branch. App. Br., ECF 55 at 37–43. This Court concludes that 40 U.S.C. § 1315(c) articulates a sufficiently intelligible principle to render Defendant's convictions constitutional.

The Legislative Vesting Clause locates "[a]ll legislative Powers . . . in a Congress of the United States." U.S. Const., art. I, § 1. By implication, this language prohibits Congress from "transfer[ring] to another branch 'powers which are strictly and exclusively legislative.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality op.) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42 (1825)). But "the nondelegation doctrine does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches." *Touby v. United States*, 500 U.S. 160, 165 (1991). Congress may therefore delegate its authority to executive or judicial actors so long as it articulates an "intelligible principle" to govern the delegee's exercise of discretion. *Mistretta v. United States*, 488 U.S. 361, 372 (1989).

The "intelligible principle" requirement is "not demanding" and imposes only an "exceedingly modest limitation." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266–67 (9th Cir. 2021). Courts have "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting). But if Congress has "failed to articulate *any* policy or standard to confine discretion," the challenged delegation may fail even that minimal standard. *Gundy*, 136 S. Ct. at 2129 (internal quotation marks omitted).

Section 1315(c) satisfies the "intelligible principle" standard. The statute directs the Secretary of Homeland Security to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government," including imposing

"reasonable penalties" for violations of those regulations. 40 U.S.C. § 1315(c). This regulation imposes two critical limits on the delegation that, together, provide an intelligible principle.

First, the regulations apply only within a defined space: "property owned or occupied by the Federal Government." § 1315(c)(1). This provision suggests that the nondelegation doctrine's application to § 1315(c) may be limited. The nondelegation doctrine, as noted above, is derived by implication from Article I's Legislative Vesting Clause, but Congress's power to make regulations governing federal property is derived from Article IV's Property Clause. *See Kleppe v. New Mexico*, 426 U.S. 529, 535 (1976) (citing U.S. Const. art. IV, § 3, cl. 2). This Court is aware of no cases applying the nondelegation doctrine to the Property Clause, which is not necessarily equivalent to the legislative powers at issue in other nondelegation cases. *See Camfield v. United States*, 167 U.S. 518, 525 (1897) (describing federal power over public property as analogous "to the police power of the several states"). This basis for the statute "counsels in favor of more, rather than less, deference to Congress's choice about the degree of responsibility to assign to the Executive Branch." *United States v. Pheasant*, 129 F.4th 576, 582 (9th Cir. 2025).

Second, the regulations must be "necessary for the protection and administration" of federal property. § 1315(c)(1). Although broadly worded, this language functions as a limitation: any regulations must be necessary "to maintain and protect [federal] property and ensure its use for [its] authorized purpose," as defined by Congress. *United States v. Cassiagnol*, 420 F.2d 868, 876–77 (4th Cir. 1970) (interpreting a predecessor statute). The intelligible principle provided by this language, considered in the context of the statute as a whole, makes § 1315 "clearly a permissible delegation." *United States v. Moriello*, 980 F.3d 924, 933 (4th Cir. 2020).

PAGE 14 – OPINION

  This Court acknowledges that § 1315 does not impose particularly specific limitations. *See United States v. Baldwin*, 745 F.3d 1027, 1030 (10th Cir. 2014) (Gorsuch, J.) (querying whether Congress may "so freely delegate the core legislative business of writing criminal offenses to unelected property managers at GSA"). But similarly broad delegations have been repeatedly upheld. *see Pheasant*, 129 F.4th at 580 (9th Cir. 2025) (collecting cases), even when regulations may be backed by criminal penalties, *see id.* at 583 (collecting cases). This Court concludes that § 1315(c)(1) includes an intelligible principle that meaningfully constrains executive discretion and therefore rejects Defendant's nondelegation challenge.

## CONCLUSION

  Appellant's convictions for violating 41 C.F.R. § 102-74.385 and 41 C.F.R. § 102-74.420 are AFFIRMED.


  **IT IS SO ORDERED.**

  DATED this 21st day of August, 2025.

                /s/ Karin J. Immergut
                Karin J. Immergut
                United States District Judge